

FILED

MAY 21 2020

Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>BRANDON PATRICK DALTON,<br><br>Defendant/Movant. | Cause No. CR 15-098-BLG-SPW<br>CV 17-115-BLG-SPW<br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE OF<br>APPEALABILITY |

This case comes before the Court on Defendant Dalton's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Represented by counsel Nancy Schwartz, he filed an amended motion on November 14, 2019 (Doc. 91). The United States responded on February 10, 2020 (Docs. 96, 97), and Dalton replied on April 15, 2020 (Doc. 102).

## I. Background

On August 21, 2015, a grand jury indicted Dalton on one count of possessing 500 grams or more of a substance containing methamphetamine with intent to distribute it, a violation of 21 U.S.C. § 841(a)(1) (Count 1), and one count of possessing firearms in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1)(A) (Count 2). Count 1 described a pertinent time period extending from April 2014 to August 29, 2014. *See* Indictment (Doc. 3) at 2–3.

1

The indictment asserted that, due to the type and quantity of the drug—500 grams or more of a substance containing methamphetamine—Dalton was subject to a ten-year mandatory minimum prison sentence if convicted on Count 1. *See* 21 U.S.C. § 841(b)(1)(A)(viii). If convicted on Count 2, he faced a mandatory minimum prison sentence of at least five years, consecutive to any term imposed for conviction on Count 1. *See* 18 U.S.C. § 924(c)(1)(D)(ii).

On October 19, 2015, the parties filed a fully executed plea agreement. Dalton agreed to plead guilty to Count 1 and to waive his right to appeal the sentence. The United States agreed to dismiss Count 2 and to recommend that Dalton receive a three-point reduction in his advisory sentencing guideline calculation for acceptance of responsibility. *See* Plea Agreement (Doc. 22-1) at 2 ¶ 2, 6 ¶ 6, 6–7 ¶ 8.

At the change of plea hearing, Dalton disputed the accuracy of his girlfriend's statement that he sold two to four ounces of methamphetamine a day. He also said his own recorded statement, in which he stated that he sold ten to 15 pounds of methamphetamine in the past five months, was "a little bit of miscommunication." *See* Change of Plea Tr. (Doc. 49) at 24:17–25:4. Dalton pled guilty to Count 1 in open court on October 23, 2015, specifically agreeing he was responsible for more than 500 grams of methamphetamine. *See id.* at 25:6–12, 26:10–13; Minutes (Doc. 24).

A presentence report was prepared. Dalton contested the drug amount, a two-level enhancement for his role in the offense, and the criminal history calculation. After hearing witness testimony, the Court found he was responsible for more than ten pounds of actual methamphetamine. *See* Sentencing Tr. (Doc. 50) at 47:25–51:25.

Under the advisory sentencing guidelines, the base offense level was 38. Dalton received a two-point enhancement for possession of a firearm and a three-level reduction for acceptance of responsibility. The Court did not impose an enhancement for role in the offense. The total offense level was 37. With a criminal history category of II, the advisory guideline range was 235 to 293 months. *See* Sentencing Tr. at 52:1–10; Presentence Report ¶¶ 31–33, 35–40, 46–47; Statement of Reasons (Doc. 39) at 1 ¶ III.

Dalton requested a sentence of 120 months. *See* Sentencing Tr. (Doc. 50) at 59:12–16. The Court found that a sentence of 135 months was sufficient, but not greater than necessary, to achieve the objectives of federal sentencing. *See id.* at 63:10–13; 18 U.S.C. § 3553(a); Minutes (Doc. 37); Judgment (Doc. 38) at 2–3.

Dalton appealed, but he voluntarily dismissed the appeal on May 12, 2017. *See* Order (Doc. 58) at 1. His conviction became final on August 10, 2017. *See* *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Representing himself, Dalton timely filed his original § 2255 motion on

3

August 17, 2017. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276

(1988). The Court later appointed counsel to represent him. *See* Order (Docs. 82,

85).

## II. Claims and Analysis

Dalton claims that counsel was ineffective in various respects. These claims

are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). He must show (1)

that counsel's performance fell outside the wide range of reasonable professional

assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for

counsel's unprofessional performance, the result of the proceeding would have

been different, *id.* at 694.

Dalton contends that counsel should have "objected" to aggregation of all

amounts of methamphetamine he possessed with intent to distribute between April

and August of 2014. *See* Am. § 2255 Mot. (Doc. 91) at 5–15. He claims counsel

should have objected at sentencing to the purity of the methamphetamine and to

the manner in which personal-use amounts were deducted from the total drug

amount. *See id.* at 15–21. Dalton also claims that the cumulative effect of these

errors "rendered the sentencing fundamentally unfair." *Id.* at 21–22.


### A. Procedural Default

The United States argues that all of Dalton's claims:

4

are essentially straightforward challenges to the mandatory minimum
penalty and guideline calculations . . . couched as ineffective
assistance of counsel claims.  There is not a need to conduct further
discovery to address these claims, and the record the defendant would
have presented to the appellate court is essentially the same record
that is before this Court.  Further, there are no external factors that
prevented him from making the same challenges on direct appeal.  As
such, there can be no cause or prejudice shown for the defendant's
failure to raise those claims on direct appeal.

U.S. Resp. (Doc. 96) at 14–15.

"Couching" claims in the language of ineffective assistance is not a way for

defendants to avoid the consequences of defaulting claims on direct review.

Prevailing on direct appeal is easier than proving counsel was ineffective.  Dalton

may meet the prejudice prong of the *Strickland* test by showing that his arguments

have merit or that a different approach would have led to a better outcome.  But he

can meet the performance prong only by showing his lawyer's decisions were

unreasonable.  *See, e.g.*, U.S. Resp. at 15–16; *cf. Coleman v. Thompson*, 501 U.S.

722, 753–54 (1991) (explaining that ineffective assistance of counsel serves as

cause to excuse procedural default because it "constitutes a violation of the

petitioner's [Sixth Amendment] right to counsel, so that the error must be seen as

an *external factor*, i.e., imputed to the State.") (quoting and discussing *Murray v.

Carrier*, 477 U.S. 478, 488 (1986)  (internal quotation marks omitted and emphasis

added)).

Appellate counsel cannot default a claim of ineffective assistance of trial

counsel by failing to raise it on direct appeal, no matter how obvious the claim may be on the face of the record. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Dalton's claims are not defaulted.

## B. Merits of the Motion

### 1. Statutory Penalty Range

Dalton's first claim alleges that counsel unreasonably failed to object to the aggregation of multiple instances of possession with intent to distribute to arrive at a quantity of 500 grams or more of methamphetamine. The parties appear to agree that there was not a single day within the time period of the indictment when Dalton possessed 500 grams or more of methamphetamine (or 50 grams or more of actual methamphetamine) with intent to distribute it.

Aggregation mattered in the indictment, because the drug type and quantity alleged in the indictment may enhance the statutory penalty range for the offense. A defendant is subject to an enhanced penalty range only if a jury finds the appropriate drug type and quantity beyond reasonable doubt or the defendant admits responsibility for that type and quantity. *See* 21 U.S.C. § 841(b)(1)(A), (B); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc). At his change of plea hearing, Dalton admitted he possessed and intended to distribute 500 grams or more of a substance containing methamphetamine. *See* Plea Agreement (Doc. 22) at 3 ¶ 4; *see also*

Change of Plea Tr. (Doc. 49) at 24:12–26:13.  But Dalton does not claim counsel unreasonably advised him to accept the plea agreement.  He does not seek to undo the plea agreement.[1]  The only relief he seeks is a new sentencing hearing.  *See* Am. § 2255 Mot. (Doc. 91) at 5, 22.

The Court will assume that, as Dalton contends, possession and distribution of small amounts of methamphetamine over time cannot be aggregated to enhance the statutory penalty range applicable to a charge of possession with intent to distribute.  *See, e.g., United States v. Rowe*, 919 F.3d 752, 760 (3d Cir. 2019). Even so, Dalton provides no reason to suppose he would not have admitted responsibility for 500 grams or more of a substance containing methamphetamine in order to obtain the plea agreement whose benefits he even now seeks to retain. In other words, he fails to allege facts supporting an inference that counsel had no reason or a bad reason to fail to challenge the statutory penalty range in his case.[2] Dalton also fails to allege facts supporting a reasonable probability that the outcome of the case would have been more favorable to him if counsel had challenged the statutory penalty range.

---

[1] The plea agreement protected Dalton against a potential consecutive five-year sentence under 18 U.S.C. § 924(c)(1)(A).  *See* Plea Agreement (Doc. 22) at 2 ¶ 2; Presentence Report ¶ 32.

[2] It is not helpful for the United States to argue that amounts possessed throughout the course of a conspiracy may be aggregated, and Dalton "really" participated in a conspiracy. *See* U.S. Resp. (Doc. 96) at 18–20.  The United States did not prosecute Dalton for conspiracy.  For all Dalton's counsel (or the Court) could know, the grand jury rejected the United States' evidence and declined to indict him for conspiracy.

7

The statutory penalty range did not affect the sentence or the sentencing hearing. The guideline calculations require aggregation. *See, e.g.*, U.S.S.G. § 1B1.3(a)(1)(A), (B). Dalton's second statement provided the lowest estimate of his responsibility, and it was still well above 500 grams or more of a substance containing methamphetamine.

*Rowe* may be correct, but even if it is, Dalton meets neither prong of the *Strickland* test. This claim is denied.

### 2. Purity

Dalton claims counsel should have objected at sentencing to the purity of the methamphetamine. He points out that Bruse's statement showed Dalton received cut methamphetamine from Salazar. *See* Am. § 2255 Mot. (Doc. 91) at 18; Reply (Doc. 102) at 8 (both citing Presentence Report ¶ 8).

Methamphetamine of at least 80% purity is "ice" and is treated as actual methamphetamine. *See, e.g.*, U.S.S.G. § 2D1.1(c)(1) n.*(C) (Notes to Drug Quantity Table); *United States v. Lee*, 725 F.3d 1159, 1166 & n.7 (9th Cir. 2013) ("The quantities relating to 'Ice' are based on the total weight of the mixture, *if* the methamphetamine is of at least 80% average purity."). Methamphetamine seized from Salazar's residence was over 84.7% pure. *See* Sentencing Tr. (Doc. 50) at 24:25–25:8. The methamphetamine agents seized from Dalton's residence was 80.93% pure, totaling 15.7 grams of actual methamphetamine. *See* Presentence

Report ¶ 24.  These figures do not support a purity of less than 80%.

The purity level was established by laboratory analysis.  Absent evidence of additional cutting, counsel had no support for an argument against it.  And Dalton does not suggest counsel had or should have had such evidence.  Neither prong of the *Strickland* test is met.  This claim is denied.

### 3. Personal-Use Amounts

Dalton claims counsel should have urged the Court to subtract 360 grams from ten pounds to exclude from calculation of the base offense level the methamphetamine Dalton used himself.  *See* Am. § 2255 Mot. at 20–21; Reply at 8.

Dalton does not explain what counsel unreasonably did or failed to do. Everyone, including the Court, acknowledged that Dalton was a heavy user of methamphetamine.  *See, e.g.*, Sentencing Tr. (Doc. 50) at 49:16–20 ("an eight-ball of methamphetamine a day").  There is no reason to suppose either of the lawyers or the Court were unaware that personal-use amounts should be excluded from the base-offense level calculation.  In fact, the presentence report exhibited this awareness.  It pegged Dalton's personal use at 360 grams.  *See* Presentence Report ¶ 26.

If the Court had found Dalton responsible for ten point zero pounds of actual methamphetamine, it probably would have said at some point that personal-use

9

amounts were excluded. But, on the facts, the issue did not arise. The probation officer attributed 14.5 kilograms of actual methamphetamine to Dalton, ten kilos more than necessary to reach a base offense level of 38. *See* Presentence Report ¶¶ 26, 31. To resolve Dalton's objection, the Court had to decide which was more accurate: Dalton's first statement indicating he distributed ten to 15 pounds, corroborated by Bruse's estimate of 12 to 16 pounds, or Dalton's second statement, claiming responsibility for two to four ounces a week for four or five months (907.2 grams to 2.268 kilograms of actual methamphetamine). After listening carefully to the testimony and asking questions, *see* Sentencing Tr. (Doc. 50) at 5:2–38:5, and proceeding "conservatively," the Court found Dalton responsible for "in excess of 10 pounds," *id.* at 51:20–25. The personal-use amount of 360 grams was of little significance in the context of what the Court was called on to decide. There is no reasonable probability Dalton would have been held accountable for distributing less than ten pounds of actual methamphetamine.

Neither prong of the *Strickland* test is met. This claim is denied.

### 4. Cumulative Error

When counsel performs unreasonably in two or more respects, "prejudice may result from the cumulative impact of multiple deficiencies." *Boyde v. Brown*, 404 F.3d 1159, 1176 (9th Cir. 2005) (quoting *Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978) (en banc)); *see also*, *e.g.*, *Davis v. Woodford*, 384 F.3d 628,

654 (9th Cir. 2003); *id.* at 663-66 (B. Fletcher, J., dissenting) (demonstrating cumulative analysis).

Dalton has not identified any respect in which his lawyer performed unreasonably. Therefore, there is no basis for considering whether he suffered cumulative prejudice. *See Strickland*, 466 U.S. at 697. This claim is denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Dalton poses a good question: is a defendant charged with possessing a controlled substance with intent to distribute subject to an enhanced penalty under 21 U.S.C. § 841(b)(1)(A) or (B) if he did not possess the specified quantity at any one time? *See, e.g., United States v. Rowe*, 919 F.3d 752 (3d Cir. 2019). But in this proceeding, Dalton must show counsel performed unreasonably and unfairly

11

prejudiced him. He does not allege facts sufficient to support an inference that he would not have admitted responsibility for 500 grams or more of a substance containing methamphetamine. He also fails to allege counsel unreasonably or prejudicially failed to object to the purity found by the Court or that there is reason to suppose the Court was unaware that personal-use amounts must be excluded. Since he has not identified any instance of unreasonable performance, he cannot support a claim of cumulative prejudice. Reasonable jurists would find no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS ORDERED:

1. Dalton's amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 91) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Dalton files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 17-115-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Dalton.

DATED this _20_ day of May, 2020.

Susan P. Watters
United States District Court

12